UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONAVON E. HUFF, | ) | CASE NO. 1:10 CV 0616 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | MEMORANDUM OF OPINION |
| | ) | AND ORDER |
| J. T. SHARTLE, | ) | |
| | ) | |
| Respondent. | ) | |

Before the Court is the *pro se* petition of Donavon E. Huff for a writ of *habeas corpus* pursuant to 28 U.S.C. §2241. Petitioner, who is incarcerated at the Federal Satellite Location at Elkton (FSL Elkton) in Youngstown, Ohio, seeks twelve months placement in a Residential Reentry Center (RRC). He brings this action against FSL Elkton Warden J.T. Shartle.

*Background*

On July 19, 2007, Petitioner was sentenced to the Bureau of Prisons (BOP) for a term of 60 months for Conspiracy to Commit Identity Theft and Access Device Fraud in violation of 18 U.S.C. §§ 371, 1028(a)(7) and 1029(a)(2). *See United States v. Huff, et al.*, No. 1:07cr0034 (N.D. Ohio 2007)(Dkt. #47.) He was remanded to the custody of the BOP and claims he has been a "model" prisoner.

Petitioner's scheduled release date is January 23, 2012. Some time in late 2009, he learned he would not receive more than six months placement in a RRC. He filed an informal request with his Unit Team at FSL Elkton on December 1, 2009 and asked for twelve months placement in a

Community Corrections Center (CCC). His request was denied eight days later with the following explanation: "The unit team has reviewed you under the 2nd Chance Act and have determined that 6 months is of sufficient duration to ensure a successful reintegration back into society." (Pet.'s Ex., Req. Admin. Rem. of 12/1/09.) Petitioner appealed to Warden Shartle, who denied his request on December 18, 2009. The Warden explained that Petitioner's placement in a CCC was evaluated under the criteria of the Second Chance Act.

Petitioner appealed to the Regional Director on December 24, 2009. The Regional Director denied his appeal. Although Petitioner filed an appeal to the General Counsel, there is no evidence he received a reply.

*Analysis*

Petitioner claims the BOP has a policy which limits his placement in a RRC "for more than six months, up to twelve months." (Pet. at 11.) He believes it would be futile to further exhaust his administrative remedies because the policy would first have to be overturned by BOP Director, Harley Lappin. He cites the unreported case *Tasby v. Pratt*, 2002 WL 1160071 (N.D. Tex. 2002) to suggest the futility of exhaustion when the BOP has adopted a policy stating his ineligibility for early release.

The "policy" to which Petitioner refers is a public announcement Mr. Lappin allegedly made on July 15, 2008. Petitioner quotes the Director as stating:

> [D]o not expect any substantial move to increase to those facilities as he is relying on 'our research that showed for most inmates greater than six months in a halfway house or RRC was not productive. He further went on to say that it was cheaper to house an inmate in a low-security prison than it was to place him/her in an RRC.

2

(Pet.at 11.) Petitioner asserts that this unofficial BOP policy categorically denies prisoners more than six months placement in a CCC, which violates the Act.

Petitioner now requests twelve months placement in a halfway house, followed by six months home confinement. Petitioner explains that his spouse has suffered from "significant substance abuse and mental health issues" since his incarceration. If he were placed in a half way house earlier, he could assist his spouse and children. He notes that although he has an advanced degree, his "work history has been in positions that require a higher degree of trust–and thus will be harder to secure–than would traditional blue collar positions." He adds that employment prospects for white collar workers are much worse than for blue collar workers and, thus, he has a greater need for longer placement in a half-way house. He claims his child support obligations also dictate the "need for stable, adequate employment that will enable me to meet my requirements to support my family . . . my restitution and my CCC financial obligations." Finally, he notes his "parents are of advanced age, 78 and 67," and suffer from health issues with which he feels he needs to assist them. (Pet.'s Req. Adm. Rem. of 12/9/09 at 3.) He argues he will be irreparably harmed if denied earlier placement in a halfway house.

*Initial Review*

This matter is before the court for initial screening. 28 U.S.C. § 2243; *Harper v. Thoms*, No. 02-5520 2002, WL 31388736, at *1 (6th Cir. Oct. 22, 2002). At this stage, allegations in the petition are taken as true and liberally construed in Petitioner's favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir.2001). As Petitioner is appearing *pro se*, his petition is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir.2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir.1999). For the reasons set forth below, however, the petition lacks merit.

*Not Entitled to Habeas Relief*

Petitioner argues his right to due process was violated because Respondent refused to grant his request for twelve months placement in a CCC. The premise of Petitioner's challenge relies on the mistaken belief that the Act "requires" twelve months placement in a CCC for certain prisoners. There is no mandate, however, in the Act directing the BOP to place every prisoner in a CCC twelve months before his or her scheduled date of release.

Congress passed the Second Chance Act of 2007 ("the Act"), 42 U.S.C. § 17501, in part, to amend 18 U.S.C. § 3624(c)(1), which charges the BOP with facilitating a prisoner's reentry into society. The substance of the amendment provides: "the BOP Director shall ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (*not to exceed 12 months*), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." Second Chance Act, Pub. L. 110-199, § 251, 122 Stat. 660, 692 (effective April 9, 2008)(emphasis added). The statute is clear: prisoners are entitled to placement in a CCC *up to* 12 months.

As Petitioner noted, the BOP issued an interim policy memorandum on April 14, 2008 to address CCC placement considerations under the Act. The memorandum requires that RRC placement decisions be made on an individual basis with reference to the five-factor criteria set out in section 3621(b). Inmates previously denied RRC placement were to be reconsidered under the standards set out in the memorandum. The BOP subsequently issued the requisite regulations, effective October 21, 2008, to set forth procedures for evaluating when an inmate is eligible for transfer to a RRC or home detention. *See* 28 C.F.R. §§ 570.20-570.22. Unlike the April 14, 2008 memo, the regulations do not include the requirement for Regional Director approval for pre-release

4

RRC placement beyond six months.

Review of the petition and attachments reveals that the BOP considered Petitioner's eligibility under the relevant criteria. The fact that he was not assigned twelve months placement in a CCC is not a violation of the statute. Contrary to Petitioner's belief, the official policy of the BOP does not foreclose the assignment of a prisoner to a CCC for more than six months. Nothing in the record even suggests the BOP determined Petitioner was not entitled to more than six months as a matter of policy.

Finally, if Petitioner were denied privileges under the Act, the remedy is not an immediate transfer. Rather, the remedy would be a proper exercise of discretion by Respondent. *See Woodall v. Fed. Bureau of Prisons*, 432 F.3d 235, 251 (3d Cir.2005). Petitioner has no due process right, protected by the Fifth Amendment, to be placed in a CCC earlier than the date on which the BOP assigns him – as long the BOP has considered the factors set forth in § 3621(b) as required by the Act. The BOP has the vested right to exercise complete and absolute discretion in regard the incarceration and classification of a lawfully convicted prisoner. 18 U.S.C. § 3621; *Moody v. Daggett*, 429 U.S. 78, 88 (1976); *Beard v. Livesay*, 798 F.2d 874 (6th Cir.1986). There is no constitutional or inherent right of a convicted person to be released before the expiration of a valid sentence. *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979).

*Conclusion*

Based on the foregoing, this petition is dismissed pursuant to 28 U.S.C. § 2243. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.


Dated: September 16, 2010 　　　　　　　　　　　　　_s/John R. Adams_
　　　　　　　　　　　　　　　　　　　　　　　　　　　JOHN R. ADAMS
　　　　　　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE